## JAMES E. CATHEY, Appellant, v. STATE OF NEVADA, Respondent.

### No. 6059
October 22, 1971                                    489 P.2d 681

Robert G. Legakes, Public Defender, and Thomas D. Beatty, Deputy Public Defender, Clark County, for Appellant.

Robert List, Attorney General, Roy A. Woofter, District Attorney, and Charles L. Garner, Chief Deputy District Attorney for Appeals, Clark County, for Respondent.

## OPINION

Per Curiam:
Cathey stands convicted of first degree burglary. His appeal challenges the sufficiency of the evidence to support the jury's verdict, and other matters. During oral argument on appeal the prosecutor acknowledged that the evidence presented at trial did not connect the accused with the offense charged. Our independent review of the record leads us to the same conclusion. Indeed, the evidence supposedly pointing to the guilt of the accused is as lacking in probative force as that condemned by this court in Ex parte Hutchinson, 76 Nev. 478, 357 P.2d 589 (1960), wherein we ruled the evidence there offered to be insufficient to show probable cause to hold the accused for trial.

Reversed, and James E. Cathey shall be released from custody forthwith.

In the Matter of the Petition of MICHAEL C. FARRIS for Review of Application for Admission to the State Bar of Nevada.

### No. 6637
October 26, 1971                                    489 P.2d 1156

*Laxalt, Berry & Allison,* of Carson City, for Petitioner.

*Joseph P. Reynolds,* of Reno, for Respondent.

## OPINION

*Per Curiam:*

Petitioner Michael C. Farris heretofore sat for and passed the 1970 bar examination; however, we deferred his admission to the State Bar of Nevada pending further investigation of his moral fitness. Now, our bar examiners having completed their supplemental report, we must decide if Farris has demonstrated "that he is of good moral character and that he is willing and able to abide by the high ethical standards required of attorneys and counselors at law." SCR 51(7). Upon careful review of the record, we believe he has done so.

The young petitioner, although lacking parental guidance and steady purpose, nonetheless pursued pre-law studies at a California college while supporting himself "dealing" in Nevada casinos. Continuing to deal casino games summers at Lake Tahoe, he attended night law school at the University of Tulsa, aided by his wife, a former casino change girl who is now a school teacher. While attending law school, he worked as law librarian and assistant to the torts professor. Various faculty members have attested his conduct and demonstrated character

were good. Upon receipt of his Juris Doctor degree in the spring of 1968, he manifested interest in taking our Bar that year; however, he was a few days too late to establish the requisite six-months residency, and secured employment as a research assistant with the California Attorney General in Sacramento, where his wife became employed by the public school system.

Petitioner's past reveals one occurrence, or series of related occurrences, that casts doubt on his character. In his first application for admission to the State Bar of Nevada, filed in 1969, petitioner falsely stated that he was residing in Nevada. (He also omitted to mention certain convictions for traffic offenses in California.) Under inquiry before the local administrative committee, he first adhered to his false statements concerning his residency; however, he voluntarily returned before them, acknowledged the truth, and withdrew his application for that year. Then, having come to Reno approximately a month before, he remained and obtained employment as a law clerk to Judge Bowen, one of the senior trial judges of this state. He thus demonstrated enough purpose, enough dedication to his ambition to practice law in Nevada, and enough character, to face his mistake and subject himself to scrutiny.

In addition to Judge Bowen, another district judge, a member of our Board of Bar Governors, and others with capacity to make a meaningful judgment on the subject, have attested they believe him fit, after observing him since he came to Reno more than two years ago. Life presents few better opportunities to assess a prospective lawyer's professional dedication and purpose than that given a judge to evaluate his clerk. Judge Bowen, who thus knows petitioner well, and who would not injure the law to favor any man, has testified that during the 15 months petitioner worked with him, petitioner was honest and forthright at all times. (Upon leaving his employment with Judge Bowen, petitioner performed legal research for private practitioners; then Judge Craven requested petitioner to become his clerk. Thus, three district judges who know him have manifested confidence in him.)

The Board of Bar Examiners concede petitioner's showing is impressive; they concede the views of his witnesses are entitled to great weight; still, the Board opposes his admission to practice because they deem his showing of two years' uninterrupted rectitude too "limited in scope." This contention would be persuasive, had the Board recommended that petitioner's application merely be longer deferred, to provide further opportunity for evaluation of his willingness to conform with proper ethical

standards. However, the Board's counsel concedes the Board of Bar Examiners intended a categorical denial of his application, foreclosing his reapplication in Nevada (SCR 67), and elsewhere. Although we respect the Board and its judgment, on the record before us we are unwilling to foreclose petitioner forever from the practice of law.

While the court cannot condone petitioner's conduct, its members know something of the human situations of life. We can perceive how a young man, without fully appreciating the magnitude of the matter, might first misstate his residency on a bar application through want of fully matured judgment, and then perpetuate his misstatement through fear. Such lapses have occurred among saints and senators.

What, then, shall we do with a young man who has erred in this fashion, who has acknowledged his error, but who nonetheless has demonstrated his apparent capacity and willingness to conform with the ethical standards of our profession? On this issue, obviously, reasonable and high-minded men can and do differ; still, the duty to reconcile society's competing demands for high professional standards, and for temperate treatment of youthful irresponsibility, lies with this court.

We cannot, of course, know conclusively that petitioner's ordeal of the last two years has been sufficient to stay him from like conduct in the future. We cannot know, nor can he prove, that he has matured as much as the record before us would make it appear. We do believe, however, the evidence more than preponderates in his favor, and that, in the light of all material considerations, we should permit petitioner an opportunity to practice the profession for which he has prepared himself during the past six years.

It is therefore the decision and order of the court that petitioner will be admitted to the State Bar of Nevada on or after November 12, 1971, the date on which this court will administer the oath of office to other applicants who pass the 1971 bar examination.